UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOEL ERICK P.M.,[1]

Petitioner,

v.

WARDEN OF THE MESA VERDE DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-04429-TLN-CSK

A# 246-981-062

**RELEASE ORDER**

This matter is before the Court on Petitioner Joel Erick P.M.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed a response. (ECF No. 9.) For the reasons set forth below, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and orders Respondents to immediately release Petitioner.

///

///

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner entered the United States on or about May 13, 2023. (ECF No. 9-1 at 3.) Immigration authorities initially detained Petitioner but subsequently issued him a Notice to Appear and paroled him into the United States. (*Id.*) Petitioner states, since his release, he obtained work authorization, maintained steady employment, and provided for his family. (*Id.*) Petitioner has no criminal history. (ECF No. 9-1 at 3.)

On October 25, 2025, Petitioner reported to the Stockton U.S. Immigration and Customs Enforcement ("ICE") office as directed and ICE arrested Petitioner, claiming Intensive Supervision Appearance Program ("ISAP") violations. (*Id.*) Petitioner claims he experienced technical difficulties with the phone applications for a few check-ins compared to his consistent routine compliance with many other check-ins. (ECF No. 1 at 5–6.) Petitioner never received an opportunity to explain or dispute the alleged violations. (*Id.*) Thereafter, Petitioner was detained at Mesa Verde Detention Facility. (ECF No. 1 at 3.)

On December 5, 2025, an immigration judge denied Petitioner a custody redetermination hearing for lack of jurisdiction. *See J.E.P.M. v. Wofford*, No. 1:26-CV-0316-WBS-CKD, 2026 WL 925992, at *1 (E.D. Cal. Apr. 6, 2026). An immigration judge subsequently ordered Petitioner removed from the United States, and Petitioner appealed that decision. (ECF No. 9 at 1.)

On January 15, 2026, after nearly three months of detention, Petitioner filed a habeas petition in the Eastern District of California. (ECF No. 10 at 1.) On April 17, 2026, the Court declined to adopt the magistrate judge's findings and recommendations and denied the petition, finding Petitioner's detention is governed by 8 U.S.C. § 1225, not 8 U.S.C. § 1226:

> Having established that 8 U.S.C. § 1225 applies to petitioner, the court once more concludes that "the procedure authorized by Congress" in that statute constitutes procedural "due process" as far as petitioner is concerned. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015) (for noncitizen who "never technically 'entered' the United States," "procedural due process is simply whatever the procedure authorized by Congress happens to be." (citation modified)); *Grigoryan v. Barr*, 959 F.3d 1233, 1241 (9th Cir. 2020) (same).

> And the procedure laid out in 8 U.S.C. § 1225(b)(1)(B)(ii) is clear: it provides that a non-citizen "shall be detained [pending] further consideration of [his] application for asylum." (emphasis added). Petitioner, who filed an application for asylum that is currently pending, falls squarely within 8 U.S.C. § 1225(b)(1)(B)(ii)'s mandatory detention provision.

*J.E.P.M.*, 2026 WL 1045481, at *1.

On June 9, 2026, after nearly nine months of detention, Petitioner filed the instant Petition for Writ of Habeas Corpus. (ECF No. 1.) Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (*Id.* at 16–17.) Respondents oppose the petition, maintaining Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), but concede "[t]his case is in the category of cases for which the Court has typically ordered immediate release." (ECF No. 9.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner alleges his detention without a hearing violates the Fifth Amendment Due Process Clause. (*Id.* at 16–17.) In opposition, Respondents contend Petitioner is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b) ("§ 1225(b)). (ECF No. 9

at 1.) The Court first resolves the issue of Respondents' detention authority, in light of new controlling authority in the Ninth Circuit, before turning to Petitioner's constitutional claim.

A. Detention Authority

Contrary to Respondents' assertion, Petitioner's detention is governed by 8 U.S.C. § 1226(a) ("§ 1226(a)). Last week, the Ninth Circuit decided which statutory provision governs the detention of noncitizens who enter the United States without admission and are later apprehended in the country's interior. *See Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). In *Rodriguez Vazquez*, the plaintiff "illegally entered the United States in 2009, without admission or parole." *Id.* at *8. Immigration authorities apprehended him pursuant to a warrant in 2025 and placed him in removal proceedings. *Id.* The Ninth Circuit concluded that, because plaintiff was "present without admission" and "apprehended in the interior of the United States," he was "subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Id.* at *3. Here, Petitioner arrived at the Brownsville, Texas Port of Entry after illegally entering the United States on or about May 13, 2023, and was subsequently released on parole into the country. (ECF No. 9-1 at 3.) More than two years later, on October 25, 2025, immigration authorities detained Petitioner and placed him in removal proceedings. (*Id.*) Like the plaintiff in *Rodriguez Vazquez*, Petitioner entered without admission and was later apprehended in the interior of the United States. Thus, § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention.

At the time this Court resolved Petitioner's first habeas petition, the Ninth Circuit had not yet addressed this issue. Because the Ninth Circuit has since rejected Respondents' arguments as to § 1225(b)(2)(A), and issued controlling authority, the Court must now find that Petitioner's detention is subject to 8 U.S.C. § 1226(a). *Rodriguez Vazquez*, 2026 WL 2196424, at *3.

Section 1226(a) of the INA "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The statute affords the government broad discretion whether to release or detain the individual. *Id.* It also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial

bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Having found that Petitioner's detention is governed by § 1226(a), the Court also finds that he is entitled to the process so required under that statute including, at a minimum, a bond hearing.

B. Fifth Amendment Due Process Clause

Petitioner has been detained since October 25, 2025, and contends that his continued detention without a hearing — now exceeding nine months — violates his right to procedural due process under the Fifth Amendment. (ECF No. 1 at 16–17.) As an initial matter, in resolving Petitioner's first habeas petition, this Court assessed the process due based on its determination that § 1225 governed his detention. The Court reasoned that § 1225(b) required mandatory detention and that the statute as conferred by Congress satisfied procedural due process. *See J.E.P.M.*, 2026 WL 1045481, at *1. As explained above, however, § 1226(a), rather than § 1225(b), governs Petitioner's detention. Because the Court's prior due process finding was predicated solely on an erroneous detention authority, the Court must reassess in light of the proper statutory authority.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003). Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what

process is due.").

*i. Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.[2] The government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Moreover, Petitioner has lived in the United States for approximately three years, during which time he worked and provided for his family. The time Petitioner spent released on parole creates a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

*ii. Process Required*

To determine what process is necessary to ensure any deprivation of Petitioner's liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and

---

[2] A few missed check-ins do not diminish a petitioner's protected liberty interest in remaining out of custody. *See Kaur v. United States Dep't of Homeland Sec.*, 813 F. Supp. 3d 1167, 1176 (E.D. Cal. 2025) (finding a substantial liberty interest exists even when "Petitioner missed some ICE check-ins"); *Juan B.P. v. Andrews*, No. 1:26-cv-01475-TLN-CSK, 2026 WL 707468, at *2–3 (E.D. Cal. Mar. 13, 2026) (finding a protected liberty interest despite "three to four unintentional missed check-ins"); *Jelber D.O. v. Robbins*, No. 1:26-cv-00471-TLN-DMC, 2026 WL 177791, at *3–4 (E.D. Cal. Jan. 21, 2026) (finding a protectable liberty interest despite missed photo submissions and a missed call, where the petitioner "substantially complied with the conditions of his release").

the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Petitioner has never received a custody hearing at which a neutral decisionmaker evaluated whether he poses a danger or flight risk, considered whether conditions of release could address either concern, or required the government to justify his continued confinement. At Petitioner's December 5, 2025court appearance, the immigration judge denied Petitioner a custody hearing solely for lack of jurisdiction and did not reach the merits of custody determination. That proceeding provided no meaningful safeguard against erroneous detention. Respondents' prior decision to parole Petitioner further heightens this concern because the government necessarily made a determination that Petitioner was not a danger or flight risk (*see* 8 C.F.R. § 212.5(b)) and that Petitioner could remain in the community subject to appropriate conditions. Respondents do not identify any change in circumstances to alter that original finding nor do they argue Petitioner is a danger or a flight risk. Indeed, Petitioner has no criminal history and was arrested while complying with an ICE appointment. Respondents also acknowledge that this case falls within the category of cases in which federal courts routinely find detention without adequate procedural safeguards violates due process and warrants immediate release. (*See* ECF No. 9.) Thus, after

more than nine months of detention, no neutral decisionmaker has found that a special justification outweighs Petitioner's protected liberty interest. The risk that Petitioner remains detained without proper justification is exceedingly high, and this factor weighs heavily in his favor. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without any opportunity to be heard is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Custody determination and bond hearings are routine processes for Respondents. Indeed, these are the very processes required under 8 U.S.C. § 1226(a). Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

The need for procedural safeguards grows with the duration of detention. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011) ("When the period of detention becomes prolonged, the private interest that will be affected by the official action is more substantial; greater procedural safeguards are therefore required.") (citation modified); *see also Demore*, 538 U.S. at 532 (2003) (Kennedy, J., concurring) (recognizing that a lawful permanent resident "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified"); *cf. Zadvydas*, 533 U.S. at 701 (explaining that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"). Petitioner has now spent more than nine months in detention without a custody determination on the merits. During that period, his need for procedural safeguards has increased, while the administrative burden of providing a routine hearing has remained unchanged. Any burden associated with providing those safeguards does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors and in light of Petitioner's circumstances and his nine months of detention, the Court finds Petitioner was entitled to a meaningful opportunity to be heard as to the justification of his detention. The fundamental requirement of due process is

the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))). To date, Petitioner has not received any opportunity to be heard. Thus, Petitioner's detention violates the Fifth Amendment Due Process Clause.

Respondents concede that this is the type of case in which the Court routinely orders release. (*See* ECF No. 9.) The Court agrees and, consistent with its prior decisions, concludes that Petitioner's release is the appropriate remedy for this constitutional violation.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Joel Erick P.M. (**A # 246-981-062**) from custody under the same conditions he was released prior to his current detention. At the time of release, Respondents must return all of Petitioner's documents and possessions. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**
2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.
3. Petitioner's Motion to Appoint Counsel is DENIED as moot. (ECF No. 2.)
4. **The Clerk of Court is directed to serve Mesa Verde Detention Facility with a**

**copy of this Order.**

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: August 5, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE